UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | |
|---|---|
| MARK DELISE, | CIVIL ACTION |
| Plaintiff | NO. |
| VS. | |
| METRO-NORTH RAILROAD COMPANY, | |
| Defendant | |

_____X

## COMPLAINT

1. The plaintiff brings this action against the defendant for injuries suffered by him while in the employ of the defendant Railroad for violations of the Federal Employers' Liability Act, violations of the Family and Medical Leave Act (FMLA), and for violations of the plaintiff's privacy rights.

## JURISDICTION

2. This Court has subject matter jurisdiction in this case pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 and the Family and Medical Leave Act 29 U.S.C. § 2601 *et seq.* and 28 U.S.C. § 1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue properly lies in this Court pursuant to 45 U.S.C. § 56 and pursuant to 28 U.S.C. § 1391.

## PARTIES

3. The plaintiff is of East Haven, Connecticut.

4. The defendant, Metro-North Railroad Company, is a railroad corporation duly established by law, and having a usual place of business in New Haven, Connecticut.

5. During all times herein mentioned, the defendant was a common carrier engaged in the business of interstate commerce, and as such, operated a railroad in such business between New York, New York, and New Haven, Connecticut.

6. At the time the plaintiff received the injuries complained of, he was employed by the defendant Railroad as an electrician.

7. At the time the plaintiff received the injuries complained of, the defendant Railroad was engaged in interstate commerce and the plaintiff was employed in furtherance of said commerce.

8. During all relevant times hereto, the plaintiff was engaged in his duties as an electrician at or about Bridgeport and New Haven, Connecticut, which terminals, yards, lines, tracks, rails, engines, trains, shops, storerooms, and all other equipment and appliances appurtenant thereto were owned and/or operated and/or controlled and/or maintained by the defendant corporation.

9. The plaintiff was employed by Metro-North as an electrician in the Power Department from June 1993 through November 21, 2005.

10. In or about 1996 Metro-North's Supervisor Steve Fauci became aware that the plaintiff had a psychiatric condition that necessitated in-patient treatment at a psychiatric hospital when the plaintiff called him to inform him that he would not be at work and Supervisor Fauci demanded to know why he could not be at work.

11. Upon his return to work following a period of hospitalization in 1996, the Metro-North Medical Department was made aware that the plaintiff had attempted suicide.

12. In or about 1997, the plaintiff received a letter from Metro-North threatening him that excessive absenteeism would not be tolerated even though the plaintiff had missed approximately 6 days of work and he was contractually entitled to take approximately 12 sick days.

13. After receipt of Metro-North's letter, the plaintiff informed Supervisor Fauci he was under the care of a doctor for chronic depression and he did not want threatening letters from Metro-North.

14. Supervisor Fauci ordered the plaintiff to provide him with notes from his treating psychiatrist to justify the plaintiff's use of sick days.

15. The plaintiff complied with Supervisor Fauci's order and provided him with copies of notes from his treating psychiatrist.

16. From 1997 through 1999, the plaintiff received several letters from Metro-North threatening to discipline him for using his allocated sick days.

17. The plaintiff met with Supervisor Fauci to inform him that the plaintiff continued to receive threatening letters from Metro-North about the use of sick days.

18. Supervisor Fauci ordered the plaintiff to provide him with a note once per year from his doctor justifying his absences from work.

19. The plaintiff followed Supervisor Fauci's order and provided him with doctor's notes.

20. In 2003, the plaintiff received another letter from Metro-North threatening him with discipline for use of sick days.

21. In July of 2003, Metro-North management was informed that Supervisor Fauci had called an electrician a "pussy" for expressing concerns about safety and he threatened to knock the electrician out. He also verbally accosted an electrician for missing work while under a doctor's care for emotional distress.

22. On at least two other occasions Metro-North employees complained to Metro-North management that Supervisor Fauci was verbally abusive to Metro-North employees.

23. In or about 2004, the plaintiff applied for leave for his psychiatric conditions under the FMLA.

24. Supervisor Fauci copied the entire FMLA application for the plaintiff and kept his own file on the plaintiff and forwarded the original application to Power Department Manager Darren Dambrosio.

25. In or about the fall of 2004, Metro-North approved the plaintiff's request for medical leave for his psychiatric conditions and informed him that he was entitled to 12 weeks of leave.

26. Metro-North Assistant Supervisor John Anderson demanded that the plaintiff inform him of whether or not the plaintiff was approved for leave under the FMLA because Supervisor Fauci had ordered him to find out.

27. Shortly after the plaintiff was notified that his medical leave under the FMLA was approved, he received a letter from Metro-North threatening to fire him if he continued to miss days from work.

28. On or about early September of 2005, the plaintiff made a second request for leave under the FMLA in order to assist his wife with the upcoming birth of their new child.

29. On or about September 6, 2005, Metro-North sent the plaintiff a letter acknowledging it had received his request for leave under the FMLA.

30. Before September 16, 2005, Metro-North Supervisor Steve Fauci yelled at the plaintiff, "When the fuck is your FMLA leave up?"

31. On or about September 16, 2005, the plaintiff provided Metro-North with his application for leave under the FMLA to assist and care for his pregnant wife following the upcoming birth of their baby who was due in October of 2005.

32. On or about September 19, 2005, Metro-North sent the plaintiff a letter informing him that it had not received his FMLA "application."

33. On September 22, 2005, the plaintiff arrived at work in Bridgeport, Connecticut and Supervisor Fauci was in Assistant Supervisor John Anderson's Office.

34. Supervisor Fauci exited Anderson's office and confronted the plaintiff while the plaintiff was at the gang table with several co-workers waiting for work instructions.

35. Supervisor Fauci repeatedly jammed his finger into the plaintiff's abdomen and called him fat.

36. Supervisor Fauci called the plaintiff a "baby" because he sought to take 6 weeks of leave to take care of his wife after their child was born.

37. Supervisor Fauci called the plaintiff a "faggot."

38. Supervisor Fauci called the plaintiff a "pussy" for taking so much FMLA time for a pregnant wife.

39. Supervisor Fauci also ridiculed a co-worker for taking several weeks off for his wife's pregnancy and birth of their child.

40. The plaintiff asked Supervisor Fauci to consider that the co-worker's wife might have been really sick or in need of her husband's help.

41. Supervisor Fauci stated, "Fuck his wife."

42. The plaintiff left the office area and proceeded into the hallway and Supervisor Fauci followed him into the hallway and told the plaintiff he would have to use one week of vacation time for his leave.

43. On the afternoon of September 22, 2005, the plaintiff called Metro-North's Human Resources Specialist, Zanetta Johnson, and informed her of what Supervisor Fauci had said and done. She informed the plaintiff that an investigation would be conducted.

44. Ms. Johnson called the plaintiff back approximately ten minutes later and informed him that his request for 6 weeks leave under the FMLA was granted.

45. After September 22, 2005, the plaintiff's union representative, Alex Landisio, met with Supervisor Fauci and Fauci informed Landisio that Fauci had personal and medical files on the plaintiff proving he was mentally incompetent with a history of mental problems.

46. Supervisor Fauci also told Assistant Supervisor John Anderson that the plaintiff has a manic depressive disorder.

47. On or about October 6, 2005, the plaintiff's wife gave birth to a baby girl and the plaintiff began his six weeks of approved leave.

48. On or about October 7, Metro-North sent a letter confirming that his application for leave was approved up to November 16, 2005.

49. On October 19, Metro-North issued an "Abolishment Notice" effectively abolishing the plaintiff's position of Drawbridge Electrician in the Electrical Department within the Power department that became effective on October 20, 2005. (Exhibit A)

50. The Abolishment Notice was issued and signed by Supervisor Fauci.

51. The plaintiff complained to Metro-North about the job abolishment order and it was later revoked.

52. Upon his return from leave, the plaintiff sought to get an electrician job in the M-2 Railroad Car Repair Shop, a department within Metro-North where he would not be under Fauci's supervision.

53. Metro-North demanded that the plaintiff take a written test that was irrelevant to the electrician job he sought and a test that was not administered to the plaintiff's co-worker.

54. Metro-North refused to hire the plaintiff for the job in the M-2 shop and instead hired a co-worker who had ten years less experience than the plaintiff.

55. The plaintiff returned to work on or about November 16, 2005 and in the course of performing his duties was ridiculed by a co-worker for having psychiatric problems.

56. As a result of the aforementioned conduct, the plaintiff was constructively discharged on or about November 21, 2005.

**First Count:  Violations of the Family And Medical Leave Act
29 U.S.C. § 2601 et seq.**

57. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth under this cause of action.

58. Metro-North was required to comply with the FMLA.

59. The plaintiff was eligible for FMLA leave.

60. Metro-North repeatedly violated the FMLA by intimidating him, harassing him and retaliating against him for attempting to exercise and for exercising his FMLA rights.

61. Metro-North violated the FMLA by interfering with his attempts to exercise his FMLA rights.

62. Metro-North violated the FMLA by discriminating against him because he exercised and attempted to exercise his FMLA rights.

63. As a result of Metro-North's violations of the FMLA, the plaintiff's job was terminated and the plaintiff was constructively discharged from his job.

64. The plaintiff seeks damages for (1) lost wages, (2) lost employment benefits, (3) interest, (4) liquidated damages, (5) reasonable attorneys' fees, and (6) equitable relief.

## Second Count:  Federal Employers' Liability Act 45 U.S.C. § 51 et seq. (Negligent Hiring, Retention or Failure To Remove from Supervisory Position)

65. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth under this cause of action.

66. As a result of the negligence of the defendant Railroad, its agents, servants, or employees, the plaintiff was injured.

67. As a result of the failure of the defendant Railroad, its agents, servants, or employees to use reasonable care to provide the plaintiff with a safe place in which to work, including but not limited to furnishing him with supervision, assistance, training, or procedures, the plaintiff was injured.

68. As a result of said injuries, plaintiff has suffered and will suffer lost wages and benefits, impairment to earning capacity, medical expenses, pain and suffering, and mental anguish.

69. Metro-North's aforementioned conduct was intended to inflict emotional distress or Metro-North knew or should have known that emotional distress was the likely result from its conduct.

70. Metro-North sent the plaintiff threatening letters in furtherance of its objectives to reduce absenteeism.

71. Metro-North's Supervisor Fauci's conduct toward the plaintiff was in furtherance of Metro-North's objective to discourage employee absences from work.

72. Metro-North was negligent in hiring, supervising, failing to fire, or failing to remove Supervisor Fauci from a supervisory position.

73. Metro-North's conduct was extreme and outrageous and caused the plaintiff severe emotional distress.

74. As a result of Metro-North's negligence, the plaintiff seeks money damages.

**Third Count: Federal Employers' Liability Act 45 U.S.C. § 51 et seq. (Intentional Infliction of Emotional Distress)**

75. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth under this cause of action.

76. As a result of the negligence of the defendant Railroad, its agents, servants, or employees, the plaintiff was injured.

77. As a result of the failure of the defendant Railroad, its agents, servants, or employees to use reasonable care to provide the plaintiff with a safe place in which to work, including but not limited to furnishing him with safe and suitable supervision, assistance, training, or procedures, the plaintiff was injured.

78. As a result of said injuries, plaintiff has suffered and will suffer lost wages and benefits, impairment to earning capacity, medical expenses, pain and suffering, and mental anguish.

79. Metro-North's aforementioned conduct was intended to inflict emotional distress or Metro-North knew or should have known that emotional distress was the likely result from its conduct.

80. Metro-North sent the plaintiff threatening letters in furtherance of its objectives to reduce absenteeism.

81. Metro-North Supervisor Fauci's conduct toward the plaintiff was in furtherance of Metro-North's objective to discourage employee absences from work.

82. Metro-North was negligent in hiring, supervising, failing to fire, or failing to remove Supervisor Fauci from a supervisory position.

83. Metro-North's conduct was extreme and outrageous and caused the plaintiff severe emotional distress.

84. As a result of Metro-North's negligence, the plaintiff seeks money damages.

**Fourth Count:  Invasion of Privacy**

The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth under this cause of action.

85. The aforementioned conduct by Metro-North violated the plaintiff's privacy rights.

86. As a result of Metro-North's violations of the plaintiff's privacy rights, the plaintiff suffered mental distress and harm to his interest and privacy.

87. As a result of Metro-North's disclosure of private facts, the plaintiff seeks money damages.

WHEREFORE, in order to fairly and justly compensate the injured plaintiff and thereby promote safe operating conditions on the defendant Railroad and the free exercise of FMLA rights on the defendant Railroad, plaintiff demands a jury verdict and a money judgment against the defendant Railroad in addition to any further relief which the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY.

FOR THE PLAINTIFF

By his attorneys,

By _____
Charles C. Goetsch
Scott E. Perry
CAHILL, GOETSCH & MAURER P.C.
43 Trumbull Street
New Haven, Connecticut  06511
(203) 777-1000
ct00776

# Exhibit A

 

# POWER DEPARTMENT
## Springdale, CT

## ABOLISHMENT NOTICE

**NOTICE NO.:** 58309-04-05   **DATE:** 10/19/05

**DEPARTMENT:** ELECTRICAL

**EFFECTIVE 12:01 A.M., THE FOLLOWING POSITION(S) WILL BE**

**ABOLISHED ON:** 10/20/05

**POSITION(S):** Drawbridge Electrician

**INCUMBENT:** M. Delise

**JOB NUMBER(S):** NHW 15025

Darin D'Ambrosio
Sr. Engineer – Power