UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————————X

| | |
|---|---|
| LISA DELISE, as Administratrix for the Estate of MARK DELISE, | CIVIL ACTION |
| Plaintiff | NO. 3:06cv00428(AWT) |
| VS. | |
| METRO-NORTH RAILROAD COMPANY, | |
| Defendant | MARCH 5, 2008 |

———————————————————————X

## SECOND AMENDED COMPLAINT

1. The plaintiff brings this action against the defendant pursuant to the Family and Medical Leave Act and the Federal Employers' Liability Act, or, in the alternative, under Connecticut state law.

## JURISDICTION

2. This Court has subject matter jurisdiction pursuant to the Family and Medical Leave Act, 29 U.S.C. Section 2601 *et seq.* (FMLA), and to the Federal Employers' Liability Act, 45 U.S.C. Section 45 *et seq.* (FELA). This Court has supplemental jurisdiction over the alternative state law causes of action pursuant to 28 U.S.C. Section 1367. Venue properly lies in this Court pursuant to 45 U.S.C. Section 56 and to 28 U.S.C. Section 1391.

## PARTIES

3. The plaintiff Lisa Delise resides in East Haven, Connecticut, and is the duly appointed Administratrix of the Estate of her late husband Mark Delise ("the decedent" or "Delise") pending in the Probate Court of East Haven, Connecticut. Mark Delise was married to Lisa and was the father of two young girls, Lilliana Delise and Grace Delise.

4. The defendant Metro North Railroad Company is a railroad corporation duly established by New York law employing more than 50 employees and having a usual place of business in New Haven, Connecticut.

5. During all relevant times, the defendant was a common carrier engaged in the business of interstate commerce, and as such operated a railroad in such business between New York, New York, and New Haven, Connecticut.

6. At the time of the defendant Railroad's conduct that resulted in or caused the injuries complained of, the defendant Railroad was engaged in the pursuit of interstate commerce and the decedent Mark Delise was employed in furtherance of said pursuit of commerce.

7. The decedent Mark Delise was employed by Metro North Railroad as an electrician in its Power Department from June 1993 until his constructive discharge in November 2005. Supervisor Steve Fauci was Delise's Metro North supervisor during that time. Fauci in turn was supervised by Metro North managers Darin D'Ambrosio and Frank Torre.

8. At the age of five, Mark Delise was the victim of an extremely traumatic sexual assault by a gang of male teenagers. This, combined with the nature of his relationship with his father and older brothers, lead to a history of depression and made him

vulnerable to abusive behavior by male authority figures occupying a position of power over his life.

9. As of 1996, Metro North Supervisor Fauci knew Mark Delise had been hospitalized in the psychiatric ward of a hospital for what Fauci described as "a mental breakdown."

10. In his capacity as Delise's Metro North supervisor, Fauci collected and maintained a file on Delise containing medical notes and records from Delise's treating psychiatrist, including documents regarding Mark's requests for FMLA leave. In 2004, Delise applied for a FMLA leave for his psychiatric condition, and Fauci retained a copy of Delise's FMLA application and a copy of Delise's treating psychiatrist's Certificate describing the need for that leave.

11. Metro North Supervisor Fauci knew that Delise was vulnerable or susceptible to emotional distress given Mark's mental condition and history. In September 2005, when Delise's union representative, Alex Landisio, was in Fauci's office, Fauci took out his file on Delise and told Landisio that "I got a medical file on Mark" and that Mark was "unstable" with "mental issues."

12. As Mark Delise's Metro North supervisor, Fauci occupied a position of actual authority over Delise with the power to affect his economic interests and to determine the quality of his daily employment experience.

13. Fauci's Metro North manager, Darin D'Ambrosio, knew Supervisor Fauci had "anger management" problems, and he and Metro North were on notice of Fauci's propensity to lash out and inflict emotional distress on the employees and individuals around him.

14. Beginning no later than 1997, Fauci's Metro North managers were aware of specific incidents confirming Fauci's violations of Metro North's standard of supervisory conduct and his inability to control his violent anger.

15. During a work place meeting in 2003, Fauci lost his temper and threatened to physically beat one of his employees. The employee filed a complaint with Metro North's office of Workforce Diversity. After a short investigation Fauci admitted to the incident and Metro North Workforce Diversity recommended that he attend a three day workshop on anger management in New York City to correct his behavior. But because the Railroad did not want to pay him for the few hours of overtime to attend the workshop in New York City, Fauci ended up going to a six hour seminar in Trumbull, Connecticut, on "how to become a better communicator." Fauci's immediate manager, Darin D'Ambrosio, confirmed that Fauci's anger management problems and behavior did not change after going to that 2003 seminar.

16. In September of 2004 Fauci's Metro North Manager Darin D'Ambrosio learned of another incident when Fauci became violently angry. D'Ambrosio asked Fauci if he "needed any help," but when Fauci refused D'Ambrosio did not pursue it any further and did not insist that Fauci attend any anger management program to deal with his anger management problems.

17. As a result of Metro North's failure to enforce its own recommendation that Supervisor Fauci be trained in anger management so as to change his unacceptable behavior, Fauci's behavior did not change and his inability to control his anger continued.

18. In September 2005 Mark applied for a six week FMLA leave of absence to begin with the anticipated birth of his daughter in early October.

19. Mark was fully qualified and eligible for that FMLA leave to be with his wife and newborn child.

20. In the early morning of September 22, 2005, Mark arrived at his Metro North work place in Bridgeport, Connecticut, and sat down at the crew table with the rest of his crew to await their assignments for the day. Supervisor Fauci entered the room and went directly to Mark. Without any provocation by Mark and in front of the entire crew, Fauci repeatedly jammed his fingers into Mark's abdomen while telling him he is a "faggot" and a "pussy" for taking FMLA leave from his Metro North job to be with his wife for the birth of his child. When Mark did not respond and tried to leave the room Fauci continued to berate him and followed him out into the hallway.

21. That afternoon Delise filed a formal written complaint with the Metro North Workforce Diversity office regarding Fauci's "outrageous behavior," including his battery and violation of Mark's FMLA rights.

22. Metro North has standards of acceptable conduct for its supervisors. Conduct that is declared unacceptable and intolerable includes harassing employees for invoking their federal statutory rights to take FMLA leave. Metro North President Peter A. Cannito confirms that each employee has "the right to be free of unlawful harassment, which is verbal or physical conduct that denigrates of shows hostility toward an individual because of his/her membership in a protected class." Metro North supervisors are responsible for creating and maintaining a workplace that is free of discrimination and harassment, and are prohibited from intimidating or retaliating

against any employee who complains of harassment. Metro North is supposed to discipline any supervisor who violates this stated policy.

23. Two of Mark's co-workers who were eyewitnesses to Fauci's battery and retaliatory harassment, Ed Mercuriano and Dean Goldberg, gave statements to the Metro North Workforce Diversity office confirming the details of Mark's complaint.

24. Supervisor Fauci also was interviewed by Workforce Diversity, and when confronted with the statements of Delise, Mercuriano, and Goldberg, Fauci admitted to what he had done.

25. Despite Fauci's prior history of violating Metro North's standards for supervisors and despite his admitting to his battery and harassment of Delise on September 22, 2005, Metro North did not remove or suspend Fauci from his supervisory position pending the result of the investigation of the incident. Metro North's failure to remove or suspend Fauci from his position of power over Delise allowed Fauci to continue to retaliate against Delise for invoking his FMLA rights and for complaining of Fauci's conduct in violation of his FMLA rights.

26. On October 6, 2005, Delise's wife Lisa went into labor and gave birth to their baby daughter, Grace. Mark was afraid to tell Supervisor Fauci that he was taking his FMLA leave and asked a co-worker to tell Fauci that he was going on the FMLA leave.

27. Delise was on his six weeks of FMLA paternity leave from October 6, 2005 to mid-November 2005.

28. On October 19, 2005, while on Mark was still on FMLA leave, Supervisor Fauci, in blatant violation of the applicable rules and practice, abolished Mark's job as well as the jobs of Ed Mercuriano and Dean Goldberg, the two co-workers who had

given statements against Fauci on Mark's behalf. This sent a powerful message to Mark, namely that Fauci still remained in a position of authority over him with the power to continue retaliating against him and to make his work life intolerable upon his return from FMLA leave. As soon as he learned of the improper job abolishments, Mark called Metro North's Workforce Diversity office to ask that upon his return from FMLA leave he would be transferred out of Fauci's supervision.

29. At the end of his FMLA leave, Mark immediately filed for a transfer out of Supervisor Fauci's department and into an electrician job located in Metro North's New Haven Shop, where he would be free from Fauci's supervision in a location reasonably accessible from his home in East Haven.

30. Despite Delise's and his union representative Alex Landisio's repeated attempts to make the transfer happen, Metro North refused to allow Delise to transfer into the New Haven Shop job, leaving him under Fauci's supervision.

31. Metro North's failure to remove or suspend Fauci gave Fauci the power to continue retaliating against Delise after his return from FMLA leave, as did Metro North's refusal to allow Delise to transfer into the New Haven Shop job. As a result, Metro North made Delise's working conditions so intolerable that Delise was forced into an involuntary resignation on November 21, 2005. Delise's workplace was permeated with discriminatory intimidation sufficiently severe to alter the conditions of his work environment, resulting in the adverse employment action of constructive discharge.

32. As a result of Supervisor Fauci's retaliatory actions of September 22nd and October 19th and as a result of Metro North's failure to remove Fauci from supervisory

power over Delise, Delise suffered severe emotional distress and constructive discharge.

33. As a result of Delise's severe emotional distress and constructive discharge, he lost all his income from his Metro North job as well as all his benefits, including medical coverage for his family and infant child. The emotional and economic distress generated by the above referenced actions of Metro North caused the death of Mark Delise by suicide on July 7, 2006. Mark's death would not have occurred but for the battery and retaliatory harassment of Mark by Supervisor Fauci and the failure of Fauci's managers to remove or suspend Fauci from continuing to exercise power over Mark.

## COUNT ONE: FAMILY AND MEDICAL LEAVE ACT

34. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 33 of this Second Amended Complaint with the same force and effect as if set forth under this cause of action.

35. At all relevant times, Metro North Railroad was required to comply with the Family Medical Leave Act.

36. As of September 2005, Mark Delise was qualified and eligible for FMLA leave to commence upon the expected birth of his infant daughter in early October.

37. In September of 2005, Mark Delise engaged in a statutorily protected activity, namely invoking his federal statutory right to apply for FMLA leave to commence upon the upcoming birth of his daughter.

38. On September 22, 2005, Metro North willfully violated the FMLA by intimidating and retaliating against Mark Delise for exercising or attempting to exercise his FMLA rights.

39. On October 19, 2005, Metro North willfully violated the FMLA by intimidating and retaliating against Mark Delise for exercising or attempting to exercise his FMLA rights.

40. Upon the completion of his FMLA leave in November 2005, Metro North willfully violated the FMLA by discriminating and retaliating against Mark Delise for exercising or attempting to exercise his FMLA rights.

41. Metro North's discriminatory and retaliatory actions made Delise's working conditions so intimidating, difficult, and intolerable that he was forced into an involuntary resignation or constructive discharge on November 21, 2005.

42. As a result of invoking his federal statutory rights under the FMLA, Mark Delise suffered adverse employment actions on September 22nd and October 18th of 2005 as well as constructive discharge on November 21, 2005.

43. Those adverse employment actions were done in retaliation for Delise's protected activity under the FMLA.

44. As a result of Metro North's violations of the FMLA, Mark Delise suffered the loss of the wages and benefits from his Metro North electrician's job.

45. Accordingly, the plaintiff is entitled to damages in the form of back pay, front pay, and liquidated damages all with interest thereon, plus attorney's fees and costs.

## COUNT TWO: FELA NEGLIGENT SUPERVISION RESULTING IN DEATH

46. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 33 of this Second Amended Complaint with the same force and effect as if set forth under this cause of action.

47. Metro North owed a duty to Mark Delise to provide him with a reasonably safe place to work free of conduct that caused his death.

48. Metro North was negligent in its supervision by and its retention of Metro North Supervisor Steven Fauci.

49. Metro North's negligent supervision by and retention of Supervisor Fauci caused the death of Mark Delise.

50. Accordingly, the defendant Metro North is liable for money damages for the loss of Mark Delise's care and support of his wife Lisa, for his lost wages and benefits, for his funeral expenses, and for the loss of the care, support, guidance, and services he would have provided to his children Lilliana Delise (DOB 02/13/02) and Grace Delise (DOB 10/06/05).

## COUNT THREE: FELA INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

51. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 33 of this Second Amended Complaint with the same force and effect as if set forth under this cause of action.

52. Metro North Supervisor Fauci intended to inflict emotional distress on Mark Delise, or knew or should have known that emotional distress likely would result from his conduct.

53. Metro North's conduct toward Mark Delise, which included physical contact in the form of battery as well as repeated retaliatory harassment, was extreme and outrageous, especially given that Supervisor Fauci knew of Delise's vulnerability and occupied a position of authority over Delise with the power to adversely affect his economic interests and the quality of his employment experience.

54. Metro North's conduct was the cause of Mark Delise's distress.

55. The emotional distress sustained by Mark Delise was severe.

56. As a result of the severe emotional distress inflicted by Metro North, Mark Delise suffered bodily harm in the form of death by suicide, with all the economic damages flowing from that death.

57. Accordingly, the plaintiff Estate is entitled to an award of money damages for compensation of Mark Delise's emotional distress, including but not limited to his humiliation, anxiety, depression, and other mental anguish flowing from the defendant's conduct, plus money damages to compensate for the bodily harm resulting from Metro North's conduct, including the total destruction of Mark Delise's capacity to earn wages and benefits.

**COUNT FOUR: IN THE ALTERNATIVE, CONNECTICUT WRONGFUL DEATH**

58. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 33 of this Second Amended Complaint with the same force and effect as if set forth under this cause of action.

59. In the alternative, if for any reason the conduct of Metro North and its managers and supervisors is found not to be cognizable or actionable under the FELA or if for any reason the wrongful death damages flowing from the conduct of Metro

North and its managers and supervisors is found to be not recoverable under the FELA, then the plaintiff invokes recovery under the Connecticut Wrongful Death Statute, C.G.S. Section 52-555, as follows.

60. The death of the decedent Mark Delise was caused by or resulted from the negligent supervision of and the intentional infliction of emotional distress by Metro North's managers and supervisors.

61. Under the Connecticut Wrongful Death Statute, the plaintiff Estate seeks money damages for (1) the destruction of decedent Mark Delise's earning capacity, (2) the destruction of decedent's ability to carry out and enjoy life's activities, (3) the value of his life itself, (4) mental anguish, (5) the death itself, and (6) funeral expenses.

### COUNT FIVE: IN THE ALTERNATIVE, CONNECTICUT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 33 of this Second Amended Complaint with the same force and effect as if set forth under this cause of action.

63. In the alternative, if for any reason the conduct of Metro North and its managers and supervisors is found not to be cognizable or actionable under the FELA or if for any reason the intentional infliction of emotional distress damages flowing from the conduct of Metro North and its managers and supervisors is found to be not recoverable under the FELA, then the plaintiff invokes recovery under Connecticut common law for Metro North's intentional infliction of emotional distress and the bodily harm flowing from it, as follows.

64. Metro North Supervisor Fauci intended to inflict emotional distress on Mark Delise, or knew or should have known that emotional distress likely would result from his conduct.

65. Metro North's conduct toward Mark Delise, which included physical contact in the form of battery as well as repeated retaliatory harassment, was extreme and outrageous, especially given that Supervisor Fauci knew of Delise's vulnerability and occupied a position of authority over Delise with the power to adversely affect his economic interests and the quality of his employment experience.

66. Metro North's conduct was the cause of Mark Delise's distress.

67. The emotional distress sustained by Mark Delise was severe.

68. As a result of the severe emotional distress inflicted by Metro North, Mark Delise suffered bodily harm in the form of death by suicide, with all the economic damages flowing from that death.

69. Accordingly, the plaintiff Estate is entitled to an award of money damages for compensation of Mark Delise's emotional distress, including but not limited to his humiliation, anxiety, depression, and other mental anguish flowing from the defendant's conduct, plus money damages to compensate for the bodily harm resulting from Metro North's conduct, including the total destruction of Mark Delise's capacity to earn wages and benefits.

### COUNT SIX: IN THE ALTERNATIVE, CONNECTICUT NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

70. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 33 of this Second Amended Complaint with the same force and effect as if set forth under this cause of action.

71. In the alternative, if for any reason the conduct of Metro North and its managers and supervisors is found not to be cognizable or actionable under the FELA or if for any reason the negligent infliction of emotional distress damages flowing from the conduct of Metro North and its managers and supervisors is found to be not recoverable under the FELA, then the plaintiff invokes recovery under Connecticut common law for Metro North's negligent infliction of emotional distress and the bodily harm flowing from it, as follows.

72. Metro North was negligent in its supervision by and its retention of Metro North Supervisor Steven Fauci.

73. Metro North's negligent supervision by and retention of Supervisor Fauci caused Mark Delise to suffer emotional distress that resulted in illness and bodily harm to Mark Delise, namely his depression and death by suicide.

74. Metro North knew or should have realized that its conduct toward Mark Delise involved an unreasonable risk of causing him emotional distress that might result in illness or bodily harm.

75. Accordingly, the plaintiff is entitled to an award of money damages for compensation of Mark Delise's emotional distress, including but not limited to his humiliation, anxiety, depression, and other mental anguish flowing from the defendant's conduct, plus money damages to compensate for the illness and bodily harm resulting from Metro North's conduct, including the total destruction of Mark Delise's capacity to earn wages and benefits.

WHEREFORE, in order to fairly and justly compensate the Estate of Mark Delise and thereby to promote the free exercise of FMLA rights on the defendant Metro North Railroad and the promotion of safe operating conditions on Metro North Railroad, the plaintiff demands a jury verdict and judgment against the defendant Metro North Railroad, in addition to any further relief the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY

> FOR THE PLAINTIFF
>
> By her attorneys,
>
> By _/s/ Charles C. Goetsch_
> Charles C. Goetsch
> CAHILL, GOETSCH & MAURER P.C.
> 43 Trumbull Street
> New Haven, Connecticut 06511
> (203) 777-1000
> ct00776

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2008, a copy of foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Charles C. Goetsch*